

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/Respondent,<br><br>vs.<br><br>GUY GEORGE PARENTEAU,<br><br>Defendant/Movant. | Cause No. CR 14-046-BLG-SPW<br>CV 16-107-BLG-SPW<br><br>ORDER DENYING § 2255 MOTION<br>AND DENYING CERTIFICATE<br>OF APPEALABILITY |

This case comes before the Court on Defendant/Movant Parenteau's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255. Parenteau is a federal prisoner proceeding pro se.

In the course of reviewing Parenteau's motion and the underlying proceedings, the Court has refreshed its memory by consulting the court reporter's rough-draft transcripts of three hearings. The United States will be required to order those transcripts for the record and to deliver a copy of each to Parenteau.

### I. Background

#### A. Underlying Criminal Case

On April 18, 2014, a grand jury indicted Parenteau on one count of stealing firearms, a violation of 18 U.S.C. § 922(u) (Count 1); one count of being a felon in possession of firearms, a violation of 18 U.S.C. § 922(g)(1) (Count 2); and one

1

count of possessing stolen firearms, a violation of 18 U.S.C. § 922(j) (Count 3). Indictment (Doc. 1) at 1-5.

Counsel twice moved for continuances to allow him to assess Parenteau's mental health situations. *See* Mots. to Continue (Docs. 12, 14). On September 26, 2014, counsel moved for a change of plea hearing, and the United States filed an offer of proof. *See* Mot. (Doc. 16); Offer of Proof (Doc. 17). The hearing convened on September 30, 2014, but it was continued to give Parenteau more time to consider what he needed to know to proceed and additional time to review his psychological evaluations. *See* Minutes (Doc. 19).

On October 6, 2014, the parties filed a fully executed plea agreement. *See* Plea Agreement (Doc. 21). On October 7, 2014, another change of plea hearing was convened. Parenteau was found competent to proceed. He pled guilty to Count 2 of the Indictment. *See* Minutes (Doc. 22).

Sentencing was set for January 15, 2015. On December 19, 2014, counsel moved to continue it for a month so that he and Parenteau could have "opportunities to sufficiently explore with counsel his mental health history and its ramifications for sentencing." Mot. to Continue (Doc. 24) at 2. The motion was granted. *See* Order (Doc. 26).

On February 25, 2015, Parenteau was sentenced to serve 84 months in prison, to be followed by a three-year term of supervised release. Minutes (Doc.

29); Judgment (Doc. 30) at 2-3. Parenteau did not appeal.

## B. Proceedings Under 28 U.S.C. § 2255

Parenteau filed the instant § 2255 motion on June 24, 2016. *See* Mot. § 2255 (Doc. 42) at 7; *Houston v. Lack*, 487 U.S. 266, 270-71 (1988) (establishing prison mailbox rule).

On February 26, 2016, Parenteau filed a § 2255 motion. *See* Mot. § 2255 (Docs. 34, 38, 39). On May 19, 2016, Parenteau withdrew the motion. *See* Notice of Withdrawal (Doc. 40). He now claims he was not the person who withdrew it. *See* Notice (Doc. 48). There is no need to decide whether he withdrew it or not. The outcome here does not depend on the answer to that question.

On March 7, 2017, the Court directed defense counsel to submit, under seal and ex parte, any materials in his case file related to Parenteau's potential claim of insanity and the consequences of prevailing on such a defense. Counsel was also directed to submit any expert evaluation he had obtained to assess Parenteau's ability to appreciate the nature and quality or wrongfulness of his acts at the time of the offense, as well as any relevant notes or memoranda. Counsel's response was served on Parenteau. Parenteau had an opportunity to respond but did not do so. *See* Order (Doc. 50) at 2 ¶¶ 2-3; Counsel Resp. (Doc. 52) at 3 (under seal).

## II. Requests for Counsel and Evidentiary Hearing

Parenteau asks that new counsel be appointed to represent him. *See* Second

Mot. § 2255 (Doc. 42) at 1. He also requests an evidentiary hearing. *See, e.g.*, Mot. § 2255 (Doc. 38) at 7.

## A. Evidentiary Hearing

"Although section 2255 imposes a fairly lenient burden on the petitioner, the petitioner is nonetheless 'required to allege specific facts which, if true, would entitle him to relief.'" *United States v. Rodrigues*, 347 F.3d 818, 824 (9th Cir. 2003) (quoting *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996)).

As shown below, Parenteau's allegations of fact are either contradicted by the record of the case, or they would not entitle him to relief even if they were proved true. In addition, he has not alleged facts that introduce entirely new issues into the case. The record, as supplemented by counsel's response to the Order of March 7, 2017, is adequate to support a fair decision of Parenteau's claims.

## B. Counsel

A district court must appoint counsel "when the case is so complex that due process violations will occur absent the presence of counsel." *Bonin v. Vasquez*, 999 F.2d 425, 428-29 (9th Cir. 1993) (discussing *Chaney v. Lewis*, 801 F.2d 1191, 1196 (9th Cir. 1986) (per curiam)). A district court has discretion to appoint counsel at any stage of the proceedings if "the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). The court must consider the likelihood of success on the merits, the complexity of the legal issues involved, and the petitioner's ability to

articulate his claims pro se. *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983) (per curiam).

Despite Parenteau's history of mental health issues, he has clearly articulated his claims. The issues are not especially complex. As explained below, the claims lack sufficient merit to warrant the appointment of counsel.

### III. Claims and Analysis

Parenteau's claims are reorganized here. All are addressed.

Parenteau claims that counsel was ineffective in several respects. Such claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). At this stage of the proceedings, Parenteau must allege facts sufficient to support an inference (1) that counsel's performance fell below an objective standard of reasonableness, *id.* at 687-88, and (2) that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. "[T]here is no reason . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

#### A. Mental Health

Parenteau alleges that trial counsel was ineffective because he failed to pursue an insanity defense, despite Parenteau's well-documented history of institutionalization. *See* Mot. § 2255 (Doc. 34) at 7; Br. (Doc. 39) at 3-6, 8; Mot. to Amend (Doc. 49) at 2-3. Parenteau claims he was not able to know right from

5

wrong at the time he possessed the firearms. *See* Aff. (Doc. 34-1) at 2-3 ¶¶ 7-8. He also contends that counsel told him he "would spend the rest of [his] life in a mental ward or hospital" if found not guilty by reason of insanity. *Id.* at 1 ¶ 3.

### 1. Insanity Defense

The federal insanity defense requires the defendant to prove, by clear and convincing evidence, that, "as a result of a severe mental disease or defect," he was "unable to appreciate the nature and quality or the wrongfulness of his acts." 18 U.S.C. § 17(a). This definition has two separate components, the first of cognitive incapacity ("nature and quality") and the second of moral incapacity ("wrongfulness"). *See Clark v. Arizona*, 548 U.S. 735, 750 & n.12 (2006) (citing 18 U.S.C. § 17(a)). Either will suffice to prove insanity. Insanity is a complete defense.

The record of the case shows that Parenteau had a history of mental health issues, including diagnoses of bipolar disorder, unspecified psychotic disorder with need to rule out schizoaffective disorder, schizophrenia, and antisocial personality disorder, as well as substance abuse issues. *See generally* Presentence Report (Doc. 32) ¶¶ 58-66 (under seal).[1] This extensive history would prompt competent

---

[1] Parenteau refers to his "borderline mental retardation." Parenteau Aff. (Doc. 34-1) at 3 ¶ 7. Parenteau was found to have "at least an average level of intelligence." *See* Dr. Wendlandt Report (Doc. 52-4) at 3 para. 8. His active participation in the change of plea colloquy clearly indicated at least average intelligence.

counsel to seek professional interpretive guidance.

Counsel's response to the Court's Order of March 7, 2017, shows that counsel indeed obtained an evaluation of Parenteau's fitness to proceed as well as his ability to appreciate the nature and quality or wrongfulness of his acts. Dr. Wendlandt's report was dated August 20, 2014. Dr. Wendlandt's report was at least the third in five years. *See* Presentence Report ¶¶ 59-61, 65 (describing reports made in 2013 and 2009); *see also, e.g.*, Curry Mem. to Montana State Hospital (Doc. 52-1) at 1; Curry Memo to File (Doc. 52-2) at 1 para. 1, 3 para. 1. Dr. Wendlandt found Parenteau was both fit to proceed and capable of appreciating the nature and quality or wrongfulness of his acts. *See* Dr. Wendlandt Report (Doc. 52-4) at 1, 6-7; *see also* 18 U.S.C. §§ 17, 4241, 4242. There is evidence that, before beginning the evaluation, the defense team asked Dr. Wendlandt whether Parenteau should be on or off his medications when she evaluated him. She "did not think it would give a more accurate assessment" if he was not taking his medications. *See* Curry Memo to File (Doc. 52-2) at 4 para. 5. Dr. Wendlandt also took Parenteau's medications into account in her report. *See* Dr. Wendlandt Report (Doc. 52-4) at 3 paras. 4-5; 7 para. 11; 6 paras. 1, 12; 7.

Counsel's response demonstrates that he considered how Parenteau's mental health issues might bear on his responsibility for the federal crimes and on his ability to decide what to do in his case. Dr. Wendlandt opined that Parenteau "did

7

not suffer from a mental illness to the degree that at the time of the commission of the offense he was unable to appreciate the nature and quality or the wrongfulness of his acts." Dr. Wendlandt Report (Doc. 52-4) at 6 para. 7.

Other evidence tended to support the doctor's opinion. Parenteau made statements to an ATF agent suggesting that he knew he "stole" firearms and was in legal trouble as a result. *See* Offer of Proof (Doc. 17) at 4 ¶ 3. Counsel's investigator reported that the gun shop's surveillance camera footage—which surely would have been introduced into evidence at trial—suggested Parenteau "knew where the cameras were positioned," "cased the store," and then changed his sweatshirt before he broke in, apparently in a half-hearted attempt to avoid recognition. *See* Curry Memo to File (Doc. 52-2) at 3 paras. 4-6. Parenteau concealed the firearms he stole; one was not found until a month after his arrest. *See* Presentence Report ¶ 12. A competent lawyer and a reasonable juror would likely view these statements and actions as showing that Parenteau intended to get away with something he knew to be wrong.

In view of the record of the underlying case, as well as counsel's response to the Court's order, Parenteau's allegations do not support an inference that counsel's performance fell outside the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689. Further, there is no reason to believe Parenteau would, to a reasonable probability, have obtained a better outcome if

8

counsel had pursued an insanity defense. Neither prong of the *Strickland* test is met. This claim is denied.

## 2. Outcome If Found Not Guilty by Reason of Insanity

Parenteau claims that counsel told him he "would spend the rest of [his] life in a mental ward or hospital" if found not guilty by reason of insanity. This allegation might state a claim if, viewed in light of the record of the case, it supported an inference that counsel's advice about Parenteau's plea was "so incorrect and so insufficient that it undermined his ability to make an intelligent decision" about pleading guilty versus going to trial. *Turner v. Calderon*, 281 F.3d 851, 880 (9th Cir. 2002) (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992)). A "gross mischaracterization of the likely outcome" at sentencing, "combined with . . . erroneous advice on the possible effects of going to trial," may support a finding that a guilty plea was involuntary. *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986).

The law does not limit the time a person found not guilty by reason of insanity may be confined in custody. Such a person is "committed to a suitable facility until such time as he is eligible for release." 18 U.S.C. § 4243(a). To obtain release, the person has the burden of proving he will not pose a danger to others. *See id.* § 4243(e). A person who is not able to meet this burden will spend "the rest of his life in a mental ward or hospital."

9

Any competent lawyer considering the prospect of a verdict of not guilty by reason of insanity realizes the verdict is a double-edged sword. Presenting compelling evidence of insanity likely means also presenting compelling evidence the defendant has little ability to assess or control his own actions. That evidence, if combined with evidence of dangerousness, may complicate subsequent efforts to prove the defendant should be released. *See, e.g.*, *United States v. Weed*, 389 F.3d 1060, 1072-74 (10th Cir. 2004). Parenteau's history of abandoning his medication regime would not bode well for conditional release. *See* 18 U.S.C. § 4243(f)(2); Presentence Report ¶¶ 54-55, 60, 65. And a court might reasonably view as dangerous a person who steals multiple firearms, who leads police (more than once) on a high-speed chase to evade apprehension for a minor offense, and who has a record of theft and burglary. *See* Offer of Proof (Doc. 17) at 3 ¶ 1, 5 ¶ 5; *see also* Presentence Report ¶¶ 37, 43.

Confinement for the rest of his life was not a "likely" outcome of the proceedings against Parenteau, but it is an accurate description of a possible outcome under 18 U.S.C. § 4243. The prospect of a verdict of not guilty by reason of insanity was remote. There is no reason to suspect that counsel gave Parenteau "erroneous advice on the possible effects of going to trial." *Iaea*, 800 F.2d at 865. As a result, there is no reason to suspect that Parenteau would have chosen to stand trial if he had been accurately advised about a "likely" period of confinement

(whatever that would have been) if he were found not guilty by reason of insanity. Therefore, Parenteau's allegation that he chose to plead guilty because he was afraid of the sentence he would receive if found not guilty by reason of insanity does not support an inference either that counsel's advice was unreasonable or that Parenteau's decision to plead guilty was involuntary. This claim is denied.

## B. Interstate Commerce Element

Parenteau claims that counsel failed to explain to him an essential element of a violation of 18 U.S.C. § 922(g)(1). Mot. § 2255 (Doc. 34) at 4-5, 7-8; Parenteau Aff. (Doc. 34-1) at 2 ¶¶ 5-6; Br. (Doc. 39) at 6-9. This is the interstate commerce element, requiring the United States to prove the firearm was transported from one State to another or from a foreign jurisdiction to any State. *See* 9th Cir. Jury Instr. (Crim.) 8.65, at 214 (2010). Because no firearms are manufactured in Montana, any firearm found in Montana was necessarily transported in interstate commerce. Moreover, an ATF agent would have testified that none of the firearms Parenteau stole were manufactured in Montana. *See* Offer of Proof (Doc. 17) at 5 ¶ 4. There was no need for counsel to dwell on the matter, and Parenteau suffered no conceivable prejudice. Neither prong of the *Strickland* test is met. This claim is denied.

## C. Chevy Suburban

Parenteau contends that counsel was unable to tell him where the vehicle

11

Parenteau was driving was found and neither Montana nor Minnesota authorities could find a record of the vehicle's VIN. *See* Supp. (Doc. 38) at 3. Even if the vehicle was lost at some point, Parenteau was apprehended with the vehicle. *See* Presentence Report ¶ 9. There was evidence to show the stolen firearms were in it. *See id.* ¶¶ 9-14; *see also* Offer of Proof (Doc. 17) at 3 ¶ 1. Where in the vehicle the guns were found and where the vehicle wound up were not matters of significance. This claim is denied.

### D. Placement

Parenteau asks that he be incarcerated in a mental health facility. *See* Supp. (Doc. 38) at 9. This Court has no jurisdiction to dictate Parenteau's placement by the Federal Bureau of Prisons. *See* 18 U.S.C. § 3621(b).

### E. *Johnson v. United States*, __ U.S. __, 135 S. Ct. 2551 (2015)

Parenteau requests relief under *Johnson*. *See* Second Mot. § 2255 (Doc. 42) at 1-6. His base offense level was 20 because he had a prior conviction for burglary of a dwelling, which was a "crime of violence" under U.S.S.G. § 4B1.2 (Nov. 1, 2014). On March 6, 2017, the United States Supreme Court held that the advisory sentencing guidelines are not subject to *Johnson*-type due process challenges. *See Beckles v. United States*, __ U.S. __, 137 S. Ct. 886, 890 (2017). This claim is denied.

### F. Time Spent in Discussion

Parenteau claims counsel spent only five hours with him, and only twenty minutes reviewing discovery with him. He worries that the discovery may have contained pertinent information under *Brady v. Maryland*, 373 U.S. 83, 87 (1963). *See* Mot. § 2255 (Doc. 34) at 8; Parenteau Aff. (Doc. 34-1) at 2 ¶ 4; Br. (Doc. 39) at 4; Mot. to Amend (Doc. 49) at 2. But Parenteau has not identified any fact or point of law of which he was not aware and which might reasonably have led to a different and better outcome. His concern about *Brady* information is speculative. This claim is denied.

### G. Medications at Change of Plea Hearing

Parenteau states that he wanted to appeal based on the fact that he was taking medications at the time of the change of plea hearing. *See* Br. (Doc. 39) at 3. The medications were plainly helpful to him, as he explained at the hearing. It was not unreasonable for counsel to fail to realize Parenteau would want to appeal on this basis. This claim is denied.

### H. Downward Departure Under U.S.S.G. § 5K2.13

Parenteau asserts that he wanted to appeal the fact that he did not receive a downward departure under U.S.S.G. § 5K2.13 for his diminished mental capacity. See Br. at 3.

Setting aside the fact that he would have had to show plain error on appeal, it is highly unlikely Parenteau would have persuaded a reviewing court that the

departure should have been granted. The guideline does not apply if, among other things, "the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence." Parenteau's high-speed chase involved a serious threat of violence. Further, the note to the guideline states that it should apply to a defendant who "has a significantly impaired ability to (A) understand the wrongfulness of the behavior . . . or . . . exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." U.S.S.G. § 5K2.13 cmt. note 1. Guideline commentary is generally binding authority. *See Stinson v. United States*, 508 U.S. 36, 37-38 (1993).

When Parenteau has a "significantly impaired" ability to understand the wrongfulness of his acts, to use his head, or to control himself, it is because he decides to stop taking his medications. When he stops his medications, his conduct has endangered the public, thereby indicating a need to protect the public. This claim is denied.

### I. Failure to Consult Regarding Appeal

Finally, Parenteau alleges counsel entirely failed to consult with him about an appeal. Mot. § 2255 (Doc. 34) at 2, 6; Br. (Doc. 39) at 1-2; Mot. to Amend (Doc. 49) at 1-2.

Parenteau waived his right to appeal the sentence. *See* Plea Agreement

(Doc. 21-1) at 7 ¶ 10(a). His waiver was discussed at his change of plea hearing and again at the sentencing hearing. Therefore, counsel did consult with him about his right to appeal. A reasonable attorney would not have thought that Parenteau would be interested in appealing after he received a sentence at the low end of the advisory guideline range. There was no violation of *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000). This claim is denied.

## IV. United States' Motion to Dismiss

On March 16, 2017, the United States moved to dismiss Parenteau's claim under *Johnson*. See *supra* Part II.E. The motion was not necessary as the United States had not been ordered to respond to Parenteau's pleadings under § 2255. The Court has not considered it.

## V. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484

(2000)).

None of Parenteau's claims meets the threshold. He certainly had mental health issues, and they affected his behavior. But counsel's response to the Order of March 7, 2017, shows that counsel took those issues into account by obtaining a professional evaluation of the prospects for an insanity defense and ensuring he was competent to proceed. A verdict of not guilty by reason of insanity was at best a remote prospect. Even assuming counsel misstated the "likely" outcome of such a verdict, there is no reason to believe counsel gave faulty advice about Parenteau's prospect of obtaining the verdict and so no reason to believe he might have chosen trial over a guilty plea. The interstate commerce element of the felon in possession charge was never in doubt. The location of the stolen firearms within the Parenteau's Chevy Suburban was not important. The Court has no jurisdiction to decree where Parenteau will serve his prison term and no power to entertain a due process challenge to an advisory sentencing guideline's application. Even assuming the defense team spent as little time with Parenteau as he says, he has not identified any basis to think he was prejudiced as a result. It was undoubtedly a good thing that Parenteau was taking medications at the time he pled guilty. A downward departure under U.S.S.G. § 5K2.13 was unlikely to be granted; Parenteau's crimes may have been influenced by his diminished capacity, but his capacity was diminished because he stopped taking his medications. Finally,

counsel did not fail to consult with Parenteau about an appeal. The two consulted about an appeal before Parenteau entered into the plea agreement, and the waiver of appeal was revisited at both the change of plea hearing and the sentencing hearing. No reasonable attorney would have thought it necessary to consult further about an appeal after sentencing.

Reasonable jurists would find no basis to encourage further proceedings. A COA is not warranted.

Accordingly, IT IS HEREBY ORDERED:

1. Pursuant to 28 U.S.C. § 753(f), the Court CERTIFIES that the following transcripts are required to decide the issues presented by Parenteau:

   (a) the first change of plea hearing, held September 30, 2014;

   (b) the second change of plea hearing, held October 7, 2014; and

   (c) the sentencing hearing, held February 25, 2015.

2. The United States shall immediately order the transcripts of those hearings for the Court's file, with a copy of each to be delivered to Guy George Parenteau, BOP # 13294-046, FMC Fort Worth, Federal Medical Center, P.O. Box 15330, Fort Worth, Texas 76119.

3. Parenteau's requests for an evidentiary hearing and the appointment of new counsel are DENIED.

4. The United States' motion to dismiss (Doc. 51) is MOOT.

5. Parenteau's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Docs. 34, 38, 39, 42, 49) is DENIED.

6. A certificate of appealability is DENIED. The Clerk of Court shall immediately process the appeal if Parenteau files a Notice of Appeal.

7. The Clerk of Court shall ensure that all pending motions in this case and in CV 16-107-BLG-SPW are terminated and shall close the civil file by entering judgment in favor of the United States and against Parenteau.

DATED this 8th day of November, 2017.

Susan P. Watters
United States District Court